UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN P. O'NEIL, Commissioner of Social Services,
Assignee, on behalf of BETSY LORD, Assignor,

                                        Plaintiff,

        -against-                                    8:05-CV-1572
                                                      (LEK/RFT)

WAL-MART CORPORATION, as employer of
Aimee A. Vradenburg, Child Support Obligor,[1]

                                        Defendant.

_____

## MEMORANDUM-DECISION AND ORDER[2]

### I. Background

        Plaintiff Commissioner of Essex County Department of Social Services (hereinafter

"Plaintiff" or "Commissioner") brought this case to require Defendant Wal-Mart Stores, Inc.

Associates' Health and Welfare Plan (the "Plan") to extend health insurance benefits to WPL, the

stepson of Wal-Mart Employee Amie Vradenburg ("Vradenburg"), pursuant to a Qualified Medical

Child Support Order ("QMCSO" or the "Order").  Plntf's Mem. of Law (Dkt. No. 19) at 2; Deft's

Mem. of Law (Dkt. No. 16) at 2.  Defendant refuses to enroll WPL, arguing that WPL does not meet

the plan's eligibility guidelines and the Order cannot override those guidelines.  Currently before the

Court is Defendant's Motion for Summary Judgment (Dkt. No. 16) and Plaintiff Commissioner's

_____

        [1] Defendant notes that it was incorrectly named in the complaint and should be properly
named as Wal-Mart Stores, Inc. Associates' Health and Welfare Plan.  Deft's Reply (Dkt. No. 22) at
1.  Additionally, the Child Support Obligor's name is misspelled in the caption and should be Amie
Vradenburg.  See Decl. of Amie Vradenburg (Dkt. No. 16, Attach. 7).

        [2] For printed publication by the Federal Reporter.

Cross-Motion for Summary Judgment (Dkt. No. 19).

## II.   Standard for Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment." FED. R. CIV. P. 56.  The moving party must demonstrate the absence of any genuine issue of material fact.  Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once that burden is met, the non-moving party can defeat summary judgment by setting forth specific facts that form the basis of a genuine issue of fact for trial.  FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In this case, there is no factual dispute. The issue is legal, rather than factual, and both parties have moved for summary judgment.

## III.   Discussion

The United States Code outlines if and how group health plans under the Employee Retirement Income Security Program are subject to medical child support orders.  29 U.S.C. § 1169.  Under this system, a QMCSO compels a group health plan to provide benefits for an alternate recipient with some relationship to the participant.  Id. at (a)(1), (a)(2)(c).  However, a QMCSO cannot compel a group health plan to provide any type or form of benefit not otherwise provided under the plan.  Id. at (a)(4).  The exception to this rule is that a QMCSO can compel a plan to provide a new type or form of benefit if "necessary to meet the requirements of a law relating to medical child support described in section 1908 of the Social Security Act [42 U.S.C.A. § 1396g-1]." Id.

A.      Is the Order a QMCSO?

Section 1169 of Title 29 of the United States Code defines QMCSO to mean a medical child support order:

(i) which creates or recognizes the existence of an alternate recipient's right to, or assigns to an alternate recipient the right to, receive benefits for which a participant or beneficiary is eligible under a group health plan, and

(ii) with respect to which the requirements of paragraphs (3) and (4) are met[3].

29 U.S.C. § 1169(a)(2)(A).

1.      Are Stepchildren Valid Alternate Recipients?

Defendant argues that the Order is not a valid QMCSO because WPL is not a valid "alternate recipient." Deft's Response and Reply (Dkt. No. 22) at 3-4.  An alternate recipient is defined by ERISA as "[a]ny child of a participant who is recognized under a medical support order as having a right to enrollment under a group health plan with respect to such participant." 29 U.S.C. § 1169(a)(2)(C).  See also Department of Labor, Employee Benefits Security Administration, *Compliance Guide for Qualified Medical Child Support Orders* (hereinafter, "DOL Compliance Guide"), at Q1-5, found at http://www.dol.gov/ebsa/publications/qmcso.html (accessed on 8/10/07).

The participant in this case, Amie Vradenburg, is WPL's stepmother.  Decl. of Amie Vradenburg (Dkt. No. 16, Ex. B) at ¶3; 29 U.S.C. § 1002(7) (defining "participant" to refer to the employee or former employee who is enrolled in the group health plan).  Defendant argues that WPL cannot be a valid recipient because he is not Vradenburg's child.  Defendant has submitted a declaration by Vradenburg that she has never lived with WPL; is not his legal guardian; and has never claimed him as a dependant for tax purposes.  Decl. of Amie Vradenburg (Dkt. No. 16, Ex. B) at ¶ 5-8.  However, Defendant has not provided any legal support for the argument that a stepchild is

---

[3] Paragraph 3 describes contact and other basic information that needs to be included in the order, so the plan administrator is able to comply.  Paragraph 4 contains the limit to QMCSOs' power to compel health plans, as well as the exception to that limit, described above.

distinct from a "child" as defined by ERISA or that cohabitation, legal guardianship, or tax status are relevant to the definition of "child" in this context.  Instead, Defendant admits that "neither ERISA nor the Social Security Act defines the term 'parent'" to exclude stepparents.  Deft's Response and Reply (Dkt. No. 22) at 6.  This Court is not willing to presume without support that stepchildren are excluded from ERISA's definition of an alternate recipient.

The legislative record of section 1169(a) notes that "[e]very employer group health plan must honor a properly prepared QMCSO that requires a plan participant to provide coverage for a dependent child (29 U.S.C. 1169(a))."  71 Fed. Reg. 54965, 54966.  Reading this language ("*a dependant child*"), this Court determines that Congress did not intend to restrict QMCSO status based on a child's birth parentage or on any other characteristic beyond dependancy.  The order of support issued by the Family Court of Essex County, which establishes that Vradenburg is legally chargeable with the medical support of WPL, is sufficient for the purposes of this decision to establish that WPL is "a dependant child."  Order of Support (Dkt. No. 16, Ex. 4) at 2.  Therefore, WPL is a proper alternate recipient of benefits under a QMCSO.

> 2.      Does the Order Otherwise Substantially Comply with ERISA Requirements?

"It would abuse an administrator's discretion to refuse to treat an order that substantially complies with ERISA requirements as a QDRO [Qualified Domestic Relations Order]."  <u>Met. Life Ins. Co v. Bigelow</u>, 283 F.3d 436, 444 (2d Cir. 2002) (referring to a QDRO, an order treated parallel to a QMCSO, but with application to pension benefits, as well as health and welfare benefits).  The Order includes the name and social security number of the participant, as well as the name, date of birth, and social security number of the alternate recipient, although it does not include mailing addresses, as required by section 1169(a)(3).  The Second Circuit Court of Appeals has found that

4

Congress did not intend the absence of mailing addresses to prevent an order from qualification.  Id.

("The Committee intends that an order will not be treated as failing to be a qualified order merely

because the order does not specify the current mailing address of the participant and alternate payee

if the plan administrator has reason to know that address independently of the order) (quoting S.

Rep. No. 98-575 at 20 (1984), reprinted in 1984 U.S.C.C.A.N. 2547, 2566).  Accordingly, the Order

at issue in this case does substantially comply with ERISA requirements, is a qualified order, and

must be followed by the Plan.

      B.      If So, Can This Qualified Order Compel Coverage of WPL?

      Even a qualified medical child support order cannot compel a plan to provide a type of

benefit not otherwise provided, unless it fits within the statutory exception for coverage "necessary

to meet the requirements of a law relating to medical child support described in section 1908 of the

Social Security Act [42 U.S.C. § 1396g-1]." 29 U.S.C. § 1169(a)(4).   Accordingly, if coverage of

WPL is a type of benefit not otherwise provided, Plaintiff cannot compel the Plan to cover WPL,

unless this exception applies.  Section 1908 requires states to pass certain laws relating to medical

child support as a prerequisite to federal medicaid funding.  42 U.S.C. § 1396g-1.  The laws that

states must pass, pursuant to section 1908, prohibit health insurers from denying coverage of a child

because the child does not reside with the employee/participant, because the child is not the

participant's dependant for tax matters, or because the child was born out of wedlock.  Id. at (a)(1).

Additionally, among other things, states must require health insurers to enroll a child without regard

to open season restriction, if a child support order compels coverage.  Id. at (a)(3)(A).

      1.      Is Coverage of WPL a Type or Form of Benefit not Otherwise Provided?

      Defendant argues that providing benefits for WPL is a type of benefit not otherwise provided

by the Plan, as described by section 1169(a)(4), because the Plan's terms with regards to stepchildren do not cover WPL.  Deft's Mem. of Law (Dkt. No. 16) at 5.  The Plan defines eligible dependants as a legal spouse, natural children, adopted children, and stepchildren who live with the plan participant in a parent-child relationship.  Plan Provisions (Dkt. No. 16, Attach. 3) at 1.  To be eligible, stepchildren also must be claimed by the participant as dependants under the federal income tax every other year and must live with the participant nine months of the year.  Id. Defendant argues that providing coverage to stepchildren outside of the specific guidelines of the plan is a new type or form of benefit because it expands the class of eligible beneficiaries.  In contrast, Plaintiff argues that coverage of WPL is not a new "type or form" of coverage but merely an extension of the existing coverage to an additional person.  Plntf's Mem. of Law (Dkt. No. 19) at 5.

Defendant's reading is more convincing.  Firstly, the plain meaning of the statute supports Defendant's reading: any coverage that would not otherwise be available cannot be compelled except under the terms of the specific exception.  Secondly, the administrative interpretation of the statute supports Defendant's reading that a very narrow definition of "type of benefit" is intended. See DOL Compliance Guide, at Q1-16, Q1-20, Q1-30 (noting that more significant deviations from a plan's coverage, such as coverage outside a plan's geographic area, coverage of dependants, if not otherwise provided by the plan, and coverage despite preexisting conditions are outside the scope of this exception).  Accordingly, this Court adopts Defendant's reading, that a health plan's coverage of a person who would not otherwise be covered is a new type or form of benefit under the term of the statute.

6

2.       Does the Exception Apply?

Under the exception, a QMCSO can compel a health plan to provide coverage that it

otherwise would not provide, if needed to fulfill a law passed pursuant to section 1396g-1 of Title

42 of the United States Code.  The New York law that specifically incorporates section 1369g-1 is

section 2608-a of the New York Insurance Law.  N.Y. INS. LAW § 2608-a (2007).  This law

incorporates the phrasing of the federal law, mandating that:

> (a) No employer, health insurer, group health plan, health maintenance organization, or other
> entity offering medical benefits whether by insurance or otherwise, including an employee
> retirement income security act or service benefit plan, shall deny enrollment of a child under
> the health coverage of the child's parent on the ground that:
>     (i) the child was born out of wedlock,
>     (ii) the child is not claimed as a dependent on the parent's federal income tax return, or
>     (iii) the child does not reside with the parent or in the insurer's service area...

Id.

This New York statute, like the federal version, is silent on whether stepchildren are

included in the definition of "children" under this law.  Plaintiffs argue that the New York statute

must, however, be interpreted to include stepchildren because New York law expressly requires that

stepparents are responsible for the support of children "in like manner" as natural parents, when the

child is or is about to become a recipient of public assistance.  Plntf's Mem. of Law (Dkt. No. 19) at

7; N.Y. FAM. CT. ACT. § 415 (2007); N.Y. SOC. SERV. §101 (2007).  Plaintiff argues that section

2608-a must be read so as not to conflict with the larger context of New York law.  Plntf's Mem. of

Law (Dkt. No. 19) at 7; Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002) (noting

that "the preferred meaning of a statutory provision is one that is consonant with the rest of the

statute").

a.       Is New York's Law of Stepparent Responsibility Compatible with

Section 1396g-1?

Interpreting section 2608-a to include stepparents is consistent with the literal text of the statute, the literal text of the federal statute, and the purpose of the federal statute, as well as the context of New York law and policy.  See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997); Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute").  The New York legislature chose to give stepparents responsibility over children in need of public assistance to protect public finances.  Practice Commentaries to N.Y. FAM. CT. ACT. § 415 (1998).  Title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York specifically applies responsibility towards stepchildren to the health insurance context: "A family policy shall provide that adopted children and stepchildren dependant upon the insured be eligible for coverage on the same basis as natural children."  11 N.Y. COMP. CODES R. & REGS. TIT. 11, § 52.18.[4]  The federal statute, section 1908, which passed as part of the Omnibus Budget Reconciliation Act of 1993, was intended to facilitate medical coverage for children, including coverage from group health plans subject to ERISA, pursuant to QMCSOs.  64 Fed. Reg. 62074-01 (Nov. 15, 1999); 65 Fed. Reg. 82128-01 (Dec. 27, 2000).  See also Michael B. Snyder, Qualified Domestic Relations Orders, §9.5 (2006).  Interpreting section 2608-a to apply equally to stepparents and natural parents advances the goals of the federal statute: protecting public finances, expanding insurance coverage for children, and shifting some of

---

[4] New York state insurance guidelines do not regulate ERISA plans.  29 U.S.C. § 1144 (b)(2)(B).  See also FMC Corp. v. Holliday, 498 U.S. 52, 57-8 (1990).  Although this regulation does not control the Plan at issue, it shows the New York legislature's intent that a stepchild be considered a "child" to the same extent as a natural child in every part of child support, including medical care.

the cost of children's health coverage to private parties.

        b.     Does ERISA preempt New York's Law of Stepparent Responsibility for Child Support?

Defendant argues that ERISA preempts the application of New York law compelling stepparent responsibility for having any impact on this case.  Deft's Response and Reply (Dkt. No. 19) at 6, n.1.  ERISA does preempt state law that relates to employee benefit plans. 29 U.S.C. §1144(a).  However, preemption does not occur "if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability..." Burgio and Campofelice, Inc. v. New York State Dept. of Labor, 107 F.3d 1000, 1008 (2d Cir, 1997) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n. 21 (1983)) (finding that ERISA does not preempt a state law mandating prevailing wages).  This is particularly true when the state law is within the traditional areas of state authority: "where federal law is said to bar state action in fields of traditional state regulation, ... [the Supreme Court has] worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  Id. (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co, 514 U.S. 645, 655 (1995)).  The New York law mandating stepparent responsibility is both a law of general applicability, only remotely linked to ERISA, and within a traditional area of state regulation, child support.  While these factors weigh against preemption of the New York law in this context, preemption analysis ultimately boils down to Congressional intent.  Id.

There is considerable evidence that Congress did not intend for ERISA to preempt state child support statutes.  As the United States Supreme Court has noted, child and spousal "[s]upport

9

obligations, in particular, are deeply rooted moral responsibilities that Congress is unlikely to have intended to intrude upon," especially considering that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Boggs v. Boggs, 520 U.S. 833, 849 (1997) (internal citations omitted). Congress protected the state oversight of child support by crafting a specific exception to ERISA preemption for QMCSOs and QDROs. Id.; 29 U.S.C. §1144(b)(7); 65 Fed. Reg. 82128-01. With that background in mind, it is illogical to assume that Congress intended to preempt the application of a state law assigning child support obligations to stepparents and adoptive parents, especially as Congress gave no indication of such an intent. See Burgio and Campofelice, Inc., 107 F.3d at 1008. Accordingly, this Court determines that ERISA does not preempt New York law assigning child support responsibilities to stepparents and section 2608-a of the New York Insurance Law is to be interpreted consistently with that New York state law, by including stepparents and stepchildren in that statute's reference to parents and children.

          c.       Is the Coverage Ordered by the QMCSO Necessary to Meet the Requirements of Section 2608-a?

Section 2608-a, the New York law at issue, prohibits an insurer from denying coverage of a child based on that child's residence, birth out of wedlock and/or tax dependency status. The Plan seeks to deny coverage of WPL because he does not live with Vradenburg nine months of the year and is not her dependant for tax purposes. Deft's Motion for Summary Judgment (Dkt. No. 16) at 6. The justifications put forth by the Plan correspond exactly with those forbidden by New York law. Accordingly, the additional coverage ordered by the QMCSO is necessary to meet the requirements of section 2608-a, a law passed pursuant to section 1396g-1 of Title 29 of the United States Code,

and the exception described in section 1169(a)(4) applies.  As a result, the Plan must follow the

QMCSO and provide coverage for WPL, even though such coverage is beyond the coverage

ordinarily provided by the Plan.

### IV.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 16) is **DENIED**;

and it is further

**ORDERED**, that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 19) is

**GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.


**IT IS SO ORDERED**.


DATED:        August 22, 2007
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

11